IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| KIM L. ALLEN-PLOWDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:07-420-JFA-BM |
| v. | ) | |
| | ) | |
| NATIONAL HEALTHCARE | ) | **REPORT AND RECOMMENDATION** |
| OF SUMTER, CAROL BROWN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action was originally filed by the Plaintiff, pro se, asserting claims under either Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et. seq.; and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et. seq.[1] In addition to the Defendant National Healthcare of Sumter (NHS), Plaintiff originally also named several individuals as party Defendants. All of those individuals except for Carol Brown were dismissed as party Defendants by order filed October 26, 2007. Brown is a Defendant in this case pursuant to a state law defamation claim only.

Plaintiff retained counsel on September 24, 2007, and is no longer proceeding pro se.

---

[1] Plaintiff's allegations are contained in attachments to her pro se complaint form, and the exact basis for her claims is therefore difficult to discern from a reading of the Complaint. These are Plaintiff's claims as addressed in the parties' briefs on summary judgment.

1



On that same date, the Defendants filed a motion to dismiss for failure to prosecute or in the alternative to compel and motion for sanctions. After having been granted an extension, Plaintiff filed a memorandum in opposition to the Defendants' motion on October 17, 2007. Defendants thereafter filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 21, 2007. Plaintiff filed a memorandum in opposition to this motion on December 17, 2007, following which Defendants filed a reply memorandum on December 27, 2007. These motions are now before the Court for disposition.[2]

## **Background and Evidence**[3]

Plaintiff, an African-American, was hired by the Defendant in 2000 as a licensed practical nurse (LPN). Plaintiff subsequently resigned her employment, but later re-applied with the Defendant in 2003 and was re-hired. Plaintiff's Deposition, p. 96. Plaintiff was hired on both occasions by Brenda Flanagan (Caucasian), Director of Nursing. Id.[4]

Plaintiff suffered two separate injuries during her second period of employment with the Defendant, one on July 15, 2003 and another on March 2, 2004. Following her injury in July 2003, Plaintiff was placed on work restrictions by her physician which included postural and lifting limitations. Plaintiff met with Flanagan to arrange a light duty work schedule; Plaintiff's Deposition,

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed motions to dismiss and for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[4]Brenda Flanagan is now deceased.



pp. 17-19, 106; Crotts Affidavit[5]; and thereafter remained on a "light duty" designation for the remainder of her employment with the Defendant. Plaintiff's Deposition, pp. 17-19[6]; Crotts Affidavit.

On July 15, 2004 Plaintiff received a final written warning for being rude to a family member of a patient. Plaintiff's Deposition, Exhibit 1. See also Plaintiff's Deposition, pp. 48-49; Crotts Affidavit. The July 15, 2004 final written warning contained a notation that Plaintiff had been verbally warned on multiple occasions about her tone of voice and her negative attitude. Plaintiff's Deposition, Exhibit 1; see also Crotts Affidavit.

In November 2004 Flanagan came to the nurse's station where the Plaintiff and two other nurses, Melissa Jordan and Lisa Boykin, were situated. Plaintiff testified that Flanagan was angry and complained to her about not making appointments for mental health patients, even though it was Boykin who was responsible for making these appointments. Plaintiff's Deposition, pp. 38-44. Plaintiff alleges that when Flanagan realized Boykin (Caucasian) was the one responsible, she left. See Jordan Affidavit [Attachment to Plaintiff's Complaint]. No disciplinary action was taken as a result of this incident.

---

[5]Jeanie Crotts is the Administrator for the Defendant National Health Care of Sumter.

[6]Plaintiff has submitted an affidavit as an exhibit to her response in opposition to the Defendants' motion for summary judgment, in which she makes statements concerning the type of work she was required to do and whether she was provided with a reasonable accommodation by NHS for her light duty status. Defendants complain that many of the statements Plaintiff makes in her affidavit contradict her earlier testimony in her deposition, and to the extent any such contradictions exist, the undersigned has considered Plaintiff's deposition testimony as being the evidence in this case. Bickenstaff v. Vassar College, 196 F.3d 435, 455 (2d cir. 1999) ["It is beyond cavil that a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that...contradicts the affiant's previous deposition testimony."] (internal quotations and citations omitted); Kennedy v. Allied Mutual Ins. Co., 952 F2d 262, 266 (9th Cir. 1991) [party cannot create issue of fact by contradicting prior deposition testimony].

3



On November 23, 2004, Carol Brown[7] informed Flanagan that the Plaintiff was making negative comments about the Defendant to co-workers. Plaintiff's Deposition Exhibit 2; Crotts Affidavit; Brown Affidavit. Plaintiff contends that it was another nurse, Dorothy Campbell, who made these comments. Plaintiff's Affidavit, ¶¶ 32-44. Based on Brown's accusations, Crotts and Flanagan decided to terminate Plaintiff's employment for violation of the Defendant's policy on behavior, disciplinary problems, and ethical standards of conduct. Crotts Affidavit; see also Plaintiff's Deposition, pp. 89-91; Exhibit 5, pp. 57-58, 62-66.

Plaintiff filed an administrative charge of discrimination with the South Carolina Human Affairs Commission (SCHAC)[8] on December 15, 2005, alleging that she had been discriminated against on the basis of her race (African-American), age (42) and disability. See Plaintiff's Exhibit (Docket No. 92-4). After receiving a right to sue letter, Plaintiff filed this action in United States District Court.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the

---

[7] Brown was the RN supervisor at that time. Crotts Affidavit; Brown Affidavit.

[8] It is undisputed that South Carolina is a deferral state, and that the Plaintiff could therefore file her administrative claim with SCHAC. Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.

4



pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

## I.

## (Disability Claim)

In order to assert a claim under the ADA,  Plaintiff must present evidence to show that 1) she is a qualified person with a disability under the ADA, and 2) that the defendant is subject to suit under that statute.[9] 42 U.S.C. § 12112(a); see Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 467 (4th Cir. 2002), cert. denied, 123 S.Ct. 122 (2002); Tyndall v. National Education Centers, 31 F.3d 209, 212 (4th Cir. 1994); Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) [same standards apply to ADA and Rehabilitation Act].[10]  In order to be a "qualified person with a disability under the ADA", Plaintiff must meet three criteria: first, she must have a "disability"; second, she must have been "qualified" for the job in question; and third, the adverse employment action alleged must constitute unlawful "discrimination" based on her disability.  E.E.O.C. v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000); Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999); Tyndall, 31 F.3d at 212.

The term "disability" is defined as a) a physical or mental impairment that

---

[9]The Defendant does not contest that it is subject to suit under the ADA.

[10]While some cited cases deal with the Rehabilitation Act rather than the ADA, the standards are the same.  Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469, 1474 (E.D.Va. 1994) ["By design, the ADA standards mirror those of the Rehabilitation Act in this case....The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act  in this area."]; Hooven-Lewis v. Caldera, 249 F.3d at 268.

5



substantially limits one or more of the major life activities[11] of an individual, b) a record of such impairment, or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2); Pollard, 281 F.3d at 467. Hence, the initial issue before this Court is whether Plaintiff has presented sufficient evidence to create a genuine issue of fact as to whether her alleged impairment substantially limited a major life activity, whether there is any record of such a substantially limiting impairment, or whether the Defendant regarded her as having such an impairment.

Plaintiff has presented no evidence to support her claim under any of these criteria. First, Plaintiff does not herself contend that she was unable to work; therefore, the major life activity of working is not implicated. To the extent the major life activity at issue in this case is "lifting", Plaintiff's exhibits reflect that she suffered a contusion to one or both of her knees and/or was suffering from bursitis in her knees, which led to her receiving postural and lifting limitation restrictions from her physician. See Exhibit (Docket No. 32-2), pp. 20-57. However, there is no indication in any evidence before the Court that these limitations were anything other than temporary, and they did not therefore qualify as a "disability" under the ADA.  *Cf.* Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468-471 (4th Cir. 2002) [temporary impairments usually do not fall within the ADA's definition of disability]; Roush v. Weastec, Inc., 96 F.3d 840, 843-844 (6th Cir. 1996)[Where Plaintiff underwent a number of surgeries and medical procedures which corrected her kidney condition, her condition was temporary, was not substantially limiting, and did not constitute

---

[11]A "major life activity" is defined as a basic activity that an average person can perform with little or no difficulty, such as walking, hearing, speaking, learning, breathing, standing, lifting, seeing and working. Appendix to 29 C.F.R. § 1630.2(i); see Bruncko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723-727, n. 7 (5th Cir. 1995); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994), cert. denied, 513 U.S. 810 (1994) ( Rehabilitation Act).

6



at a disability under the ADA]; Halperin v. Abacus Tech. Corp., 128 F.3d 191, 199 (4th Cir. 1997) ["[T]he term 'disability' does not include temporary medical conditions, even if those conditions required extended leaves of absence from work"].

Indeed, Plaintiff bases her ADA claim not on any actual disability, but on the Defendant allegedly having regarded her as having a disability. *Cf.* MacDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996), citing Dutcher v. Ingalls Shipbuilding, 53 F.3d at 727 [holding that the Plaintiff "might have qualified as disabled under the ADA if he could have provided sufficient summary judgment evidence that he was regarded by [the Defendant] as having an impairment that substantially limited a major life activity, whether he actually had such an impairment or not."]; Rhodes v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001). However, Plaintiff has presented no evidence to support her claim that the Defendant regarded her as having a disability. While the evidence reflects that Plaintiff met with Flanagan concerning her physician's statements and was given a "light duty" designation by the Defendant as a result, this is not sufficient evidence in and of itself to create an inference that the Defendant "regarded" Plaintiff as having a disabling impairment. *Cf.* Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 703-704 (4th Cir. 2001) ["The fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'"] (quoting Kelly v. Drexel University, 94 F.3d 102, 109 (3d Cir. 1996)); Sullivan v. River Valley School District, 197 F.3d 804, 810 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["[A] defendant employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled"]; Cohen v. Township of Cheltenham, Pennsylvania, 174 F.Supp. 2d 307, 331 n. 18 (E.D.Pa. 2001) ["The court's

7



focus on whether a defendant employer regards an ADA plaintiff as disabled can only mean that the "regarded as" inquiry hinges on a defendant's perceptions."]; Witter v. Delta Air Lines, 138 F.3d 1366, 1370 (11th Cir. 1998) [To proceed under a "regarded as" claim for perceived disability under the § 12102(2) of the ADA, plaintiff would have to show that her employer "regarded [her] as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes."].

Finally, even if Plaintiff had presented evidence sufficient to create a genuine issue of fact as to whether the Defendant "regarded" her as having a disability, she has presented no evidence to show that the Defendant failed to accommodate her disability. Plaintiff testified at her deposition that she met with Flanagan concerning her medical restrictions and was granted light duty work status as a result. Plaintiff's Deposition, pp. 17-19, 106; see also Crotts Affidavit. Plaintiff testified that she thereafter continued to work as a nurse "doing the same thing as the other nurses" but would "ask people to do things for me" when necessary or would even sometimes just do work outside of her limitations. Plaintiff's Deposition, pp. 19-21. Plaintiff also testified that, while supervisors would sometimes see her performing work outside of her restrictions, she never told anyone with the Defendant's management that she was not being accommodated. Plaintiff's Deposition, pp. 21-26, 29. The undersigned can discern no evidence of a failure to accommodate in Plaintiff's deposition testimony, or in any of the other exhibits filed with the Court by either the Plaintiff or the Defendants. Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 and n. 4 (5th Cir. 1999) [noting employee has responsibility to identify the need for accommodation, and that employers cannot be expected to anticipate every problem that might arise and "spontaneously" accommodate them]; Taylor v. Phoenixville School Dist., 174 F.3d 142, 157-158 (3rd Cir. 1999) [Determining scope

8



and need for accommodation is responsibility of both employer and employee]; see also Lewis v. Zilog, Inc., 908 F.Supp. 931, 948 (N.D.Ga. 1995) [ADA plaintiff "is not entitled to the accommodation of [his] choice, but only to a reasonable accommodation."]; Stewart v. Happy Herman's Cheshire Bridge, 117 F.3d 1278, 1286 (11th Cir. 1997), Hankins v. Gap, Inc., 84 F.3d 797, 800 (6th Cir. 1996) [an employer is not required to provide the accommodation an individual wants, as long as it has "made available other reasonable and effective accommodations"]. Therefore, Plaintiff's ADA claim is without merit and should be dismissed.

## II.

## (Title VII Claims)

**Race Discrimination Claim.**  Plaintiff's Title VII race discrimination claim is for disparate treatment, based on her assertion that she was subjected to racial discrimination when she was disciplined and terminated.  In order to pursue a disparate treatment claim for race discrimination, Plaintiff must present evidence of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff has not offered any direct evidence of race discrimination in her termination,[12] and Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether she received disciplinary action and/or was discharged because

---

[12]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

9



of her race under the McDonnell Douglas proof scheme to survive summary judgment.[13]

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reason for its actions is a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the McDonnell Douglas formula and establish a

---

[13]Pursuant to recent court rulings, consideration of this claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Previously, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); *cf.* Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the McDonnell Douglas analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).

10



prima facie case of race discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996). It is undisputed that Plaintiff is a member of a protected class (African-American), and for purposes of summary judgment the Defendant does not contest that the written warning Plaintiff received on July 15, 2004 and her subsequent termination constituted adverse employment actions. However, Defendant argues that the evidence does not show that Plaintiff was satisfactorily performing her job, or that she received any adverse employment action under circumstances giving rise to an inference of unlawful discrimination. The undersigned is constrained to agree.

The evidence before the Court reflects that the written warning Plaintiff received on July 15, 2004 for being rude to a family member of a patient contained a notation that Plaintiff had earlier been verbally warned on multiple occasions about her tone of voice and negative attitude. Plaintiff's Deposition, Exhibit 1; see also Crotts Affidavit. Plaintiff testified that these notations concerning prior warnings were not on the final written warning when she signed it; however, Crotts attests that Flanagan had informed her about these prior verbal warnings and that she also saw this notation in Plaintiff's file when she decided to terminate Plaintiff's employment. Crotts Affidavit. Therefore, even assuming Plaintiff's testimony to be correct for purposes of summary judgment that

11



she had never received any such oral counselings, it is undisputed in the record that Crotts (the deciding official with respect to Plaintiff's termination) believed she had. Further, Plaintiff herself wrote on the warning form that she would strive to be more pleasant and cooperative, and conceded at her deposition that people can take her regular voice "as being rude". Plaintiff's Deposition, p. 48; Plaintiff's Deposition, Exhibit 1. Plaintiff has also presented no evidence to dispute that Carol Brown had informed Flanagan that Plaintiff was making negative comments about the Defendant to co-workers, and that this is what Crotts (who made the decision to terminate Plaintiff's employment) was told.

In order to succeed on her claim, Plaintiff's evidence must show that she was disciplined or terminated because of race discrimination, not because the Defendant made a mistake or was simply incorrect in its findings concerning Plaintiff's employment. Jamil v. Secretary Dep't of Defense, 910 F.2d 1203, 1207-1208 (4th Cir. 1990); Holder v. Raleigh, 867 F.2d 823, 828 (4th Cir. 1989); Crowley v. Prince George's County, 890 F.2d 683, 687 (4th Cir. 1989), cert. denied, 111 S.Ct. 101 (1992); McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986), cert. denied, 479 U.S. 1034 (1987); see generally Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); Jones v. Orleans Parish School Board, 679 F.2d 32, 38 (5th Cir. 1982), cert. denied, 461 U.S. 951 (1983); North Carolina Dep't of Corrections v. Gibson, 301 S.E.2d 78, 85 (N.C. 1983); Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief...."]; Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.

12



Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; see Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). *Cf.* Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977). Plaintiff has failed to present any such evidence.

Indeed, Plaintiff's entire race discrimination claim is based on her allegation that a white female, Renea Garcia, was given an alternative job to do when she was injured, while Plaintiff was not. Plaintiff's Deposition, pp. 31, 33. However, Plaintiff conceded at her deposition that she did not know the scope of Garcia's injury, what her restrictions were, whether or not she had ever gone to management and told them she couldn't perform her job with her restrictions, or had asked to be put into a different job. Plaintiff's Deposition, p. 32. This general, conclusory and unsubstantiated testimony is not sufficient to give rise to an inference of discrimination, particularly in light of the fact that Plaintiff has presented no evidence to show that any of the individuals involved in her employment decisions had ever made any racial statements, had engaged in any racially classified conduct, or had ever exhibited any overtly racial animus towards the Plaintiff or anyone else. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment]; *cf.* Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of race discrimination...."]; Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination].



Finally, even if Plaintiff had presented sufficient evidence to establish a prima facie case, she has still failed to present any evidence of pretext in the Defendant's decision making. See Causey v. Balog, 162 F.3d 795, 801-802 (4th Cir. 1998) [affirming summary judgment where employee failed to show that his employer's alleged mistreatment was based on his race]. It is undisputed in the evidence that Plaintiff had the complaints noted in the record made against her, whether Plaintiff believed they were valid or not. Further, Plaintiff has offered no evidence to show a racial motivation in these disciplinary decisions, nor has she presented any evidence to support a claim that she was the subject of race discrimination when compared to the treatment given to white employee Renea Garcia. Plaintiff's own conclusory opinion and belief that she was the victim of discrimination, no matter how heartfelt, is simply not sufficient to establish a case of discrimination or to survive summary judgment. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."]; Causey, 162 F.3d at 802 [conclusory statements without evidentiary support insufficient to create genuine issue of fact]; Glover v. Lockheed Corp., 772 F.Supp. 898, 901 (D.S.C. 1991) [summary judgment granted where Plaintiff failed to produce sufficient evidence to create a genuine issue of material fact as to whether he was discriminated against]; Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that [his] disfavorable treatment was the result of discrimination...."]. Therefore, Plaintiff's disparate treatment race discrimination claim should be dismissed.

**Hostile Work Environment Claim.** Plaintiff also complains in her Complaint that



she was subject to harassment during the time of her employment with the Defendant.[14] To establish a hostile work environment claim, Plaintiff must present evidence to prove the following elements: 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her race; 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and  4) the conduct is imputable on some factual basis to her employer. Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999).   For purposes of summary judgment, the only argument the Defendant has submitted is that the conduct complained of was not sufficiently severe or pervasive enough to alter Plaintiff's condition of employment and to create an abusive work environment.  Based on the evidence presented, the undersigned is constrained to agree.

       Plaintiff basically does not dispute Defendant's contention that her harassment claim

---

[14]Defendant initially asserts that Plaintiff's hostile work environment claim should be dismissed because the main events of which Plaintiff complains, the July 2004 written warning and the November 2004 incident involving Flanagan, both occurred more than three hundred (300) days prior to the filing of her administrative charge with SCHAC.  Title VII requires that a claimant file a charge of discrimination within three hundred (300) days from the alleged discriminatory act or acts if the claimant initially institutes proceedings with the appropriate state agency, or within thirty (30) days of the state agency's termination of its proceedings, whichever is earlier.  See 42 U.S.C. § 2000e-5(e).  However, there is some question as to exactly when in November 2004 the incident concerning Flanagan occurred, and in any event there is support for the proposition that, when considering a hostile work environment claim, events that occurred prior to the 300 day cutoff period can be considered.  Cf. Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir. 1998) [distinguishing applicability of the continuing violation theory to hostile work environment claims from other types of claims].  Therefore, for purposes of summary judgment, the undersigned has considered the merits of Plaintiff's hostile work environment claim.

15



is essentially based on the two incidents from July and November 2004.[15] With regard to the incident that occurred in November 2004, Plaintiff testified that Brenda Flanagan came up to her and asked her why medical appointments had not been made for three people. Plaintiff further testified that

> [w]ell, it came down to it where it didn't have anything to do with me. It had something to do with Lisa Boykin. When she [Flanagan] found out it was not me, all she did was walked away. She never said anything to Lisa, anything about why she did not make these appointment[s]. Lisa is white. Lisa is, say, if twenty- -twenty-five.

Plaintiff's Deposition, pp. 38-39.

Although Plaintiff described Flanagan as being "angry" about these appointments not having been made, when asked if she was ever disciplined as a result of this event, Plaintiff said "no". See generally, Plaintiff's Deposition, pp. 39-45.

As for the other incident at issue, Plaintiff testified that she was called to the office where she met with Flanagan, Crotts, and another assistant director of nursing "called Alexis". Plaintiff testified that Crotts told her she had been accused of pushing somebody down the hall in a wheelchair who had not wanted to be pushed and that Plaintiff had been rude, apparently to a patient or a family member. Plaintiff's Deposition, pp. 46-48. Plaintiff testified that she denied the accusation, but that she was written up anyway. Id, pp. 48-51.

These two incidents, even assuming that they could be found to have been racially motivated (of which there is no evidence), are simply insufficient to meet the standard of severe and pervasive conduct sufficient to create a hostile work environment under the applicable caselaw. See

---

[15]Plaintiff argues in her brief that these incidents should be considered in tandem with Defendant's failure to accommodate her request for restrictions related to her on-the-job injury and the pretextural discipline she received to establish a pervasive and abusive work environment. However, the undersigned has already previously determined that Plaintiff's allegations concerning these other claims are without merit. See discussion, supra.



Guidry v. Zale Corp., 969 F.Supp. 988, 990 (M.D.La. 1997) [isolated comments do not constitute severe or pervasive conduct]; Cram v. Lamson & Sessions, 49 F.3d 466, 474 (8th Cir. 1995) [sporadic or casual comments are unlikely to support a hostile work environment claim]; Jenkins v. New York State Dep't of Corrections, No. 01-754, 2002 WL 205674 at *6-7 (S.D.N.Y. Feb. 8, 2002) [finding that one-time occurrence of verbal harassment and shove that was devoid of any indicia of race based motive may have caused anxiety or embarrassment, but it did not prevent plaintiff from doing his job and was not an adverse employment action].

Other than these two incidents, Plaintiff just generally states that she was "the subject of unwanted harassment by her supervisor," but does not provide any specifics. Plaintiff's Brief, at p. 15. Such general and conclusory statements do not constitute "evidence" for purposes of defeating a summary judgment motion. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993). See Causey, 162 F.3d at 802 [conclusory statements, without specific evidentiary support, do not support a claim for discrimination]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment]; Godoy v. Habersham County, No. 04-211, 2006 WL 739369 at *11 (N.D.Ga. Mar. 21, 2006). Plaintiff's hostile work environment claim should therefore be dismissed.

### III.

### (ADEA Claim)

Plaintiff's age discrimination claim relates to Renea Garcia, whom Plaintiff alleges was making more money than she was even though she was a younger, less experienced nurse. Disparate treatment cases under the ADEA require proof of intentional discrimination, traditionally either by direct evidence or through the structured procedures set forth in McDonnell Douglas.

17



However, Plaintiff refused to answer any questions at her deposition concerning the basis for her age discrimination claim, and in her memorandum opposing summary judgment she concedes that she has failed to establish the elements of her age discrimination cause of action. Plaintiff's Deposition, pp. 33-35; see also Plaintiff's Brief, p. 13. Therefore, Plaintiff's age discrimination claim should be dismissed.

### IV.

### (Defamation Claim)

Plaintiff's defamation claim is asserted against the Defendant Carol Brown individually, and arises out of Brown's report to Flanagan that Plaintiff was making negative comments about the Defendant to co-workers. Plaintiff's Deposition, Exhibit 2.

The elements of defamation include: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C.Ct.App. 2001). Defamatory communications can take two forms: libel and slander. Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C. 1999). Here, the defamation alleged in the Complaint could be considered either libel or slander, since Brown's assertion was reduced to writing.

Defendant argues that Plaintiff has presented no evidence to show an unprivileged communication to a third party in this case, and that in any event Brown's communications were made in good faith. See Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 507 (S.C.

18



1998) ["the publication of defamatory matter is its communication...to a third party - someone other than the person defamed"]; Bell v. Evening Post Publishing Co., 459 S.E.2d 315, 317 (S.C.Ct.App. 1995) [communications between officers or agents of the same corporation generally enjoy a qualified privilege]; Murray v. Holnam, Inc., 542 S.E.2d 743, 749 (S.C.Ct.App. 2001) ["A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable"]. Plaintiff argues that Brown's assertions were made with malice, which draws her comments outside of the protections of the qualified privilege she would otherwise enjoy. See Fulton v. Atlantic Coast Line R.Co., 67 S.E.2d 425, 429 (S.C. 1951) ["One publishing defamatory words under a qualified or conditional privilege is only liable upon proof of express malice"]. However, Plaintiff has provided no evidence whatsoever to support this assertion.

It is undisputed in the record that Brown was a supervisor, and that her report concerning conduct which she contended Plaintiff had engaged in would ordinarily fall within the employer qualified privilege. See Crotts Affidavit; Brown Affidavit. Bell, 459 S.E.2d at 317. While Plaintiff denies she said anything wrong, the fact that she disputes Brown's version of what occurred is not sufficient to create a genuine issue of fact that Brown was acting with malice. Martino v. Amoco Chemicals Co., No. 90-1595, 1991 WL 566721 at ** 7-8 (S.C.Com.Pl. Sept. 16, 1991); Austin v. Torrington Co., 810 F.2d 416, 422-423 (4th Cir. 1987); *cf.* Pierce v. Northwestern Mutual Life Ins. Co., 444 F.Supp. 1098, 1101-1103 (D.S.C. 1978). Indeed, Plaintiff testified at her deposition that she could think of no reason why Brown would lie about her, and that up to that time she had no reason to believe that Brown "had it out for [her]." Plaintiff's Deposition, pp. 89-90.



Plaintiff also testified that she had never previously had any problems with Brown. Plaintiff's Deposition, pp. 90-91.

No inference of actual malice is present in this testimony, or in any other facts before the Court. Cooper v. Laboratory Corp. Of America Holdings, Inc., 150 F.3d 376, 381 (4th Cir. 1998) [to prove actual malice, a plaintiff must show that the offending official acted "recklessly or wantonly, or with conscious disregard of the plaintiff's rights"], quoting Constant v. Spartanburg Steel Products, 447 S.E.2d 194, 196 (S.C. 1994); see also Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126, 134 (S.C. 1999) ["where the occasion gives rise to a qualified privilege...the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded"]. This claim is without merit and should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed.** If this recommendation is accepted by the Court, Defendants' pending motion to dismiss will be **moot**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

April 2, 2008



20